UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor<br><br>    Plaintiff,<br><br>    v.<br><br>LOCAL 307, NATIONAL POSTAL MAIL HANDLERS UNION, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO,<br><br>    Defendant. | Civil Action No. 16-13455 |

## DECLARATION OF SHARON HANLEY

I, Sharon Hanley, am the Chief of the Division of Enforcement, Office of Labor-Management Standards ("OLMS"), United States Department of Labor. I have been authorized to issue the final decision regarding the timely protests that were filed with respect to the supervised election of officers for the National Postal Mail Handlers Union Local 307, ("Defendant" or "Local 307"). The following is the final decision of the Secretary of Labor.

### DECISION

The Department supervised an election of officers of National Postal Mail Handlers Union Local 307, ("Defendant" or "Local 307"), which was completed on March 5, 2018, pursuant to a Consent Decree and Order entered August 23, 2017, by this Court ("the supervised election"). Pursuant to the Consent Decree and Order, the supervised election included new elections for the positions of President, Vice President, Recording Secretary, Treasurer, State Executive Board

Member, Detroit Network Distribution Center Branch President, and Grand Rapids Branch President.

On November 8, 2017, OLMS mailed letters to interested parties, including officers, election committee members, candidates that ran for office in the 2016 election, and Local 307's attorney, inviting them to attend a pre-election conference. The pre-election conference was held at the Patrick V. McNamara Federal Building in Detroit, Michigan, on November 27, 2017. The purpose of the conference, which was open to all interested parties, was to develop election rules and procedures and to establish timeframes to be used in conducting the election. There were 17 attendees at the pre-election conference, including four OLMS representatives. OLMS mailed a copy of the rules established at the pre-election conference to all invitees on December 21, 2017.

OLMS worked with Local 307 and the election committee to prepare a nomination notice that was mailed with first-class postage to the last-known home address of all members on December 12, 2017. The nomination notice was also posted in the postal facilities where Local 307 member are employed. In addition to providing information about candidate eligibility and the methods for submitting nominations, the nomination notice also informed members that Local 307 would mail ballot packages to them on February 2, 2018, and ballots would be tallied on March 5, 2018. The nomination notice also included a reminder for members to update or correct their mailing address with the union to ensure they receive a ballot.

Upon receipt of returned undeliverable nomination notices, the Election Committee and the OLMS Election Supervisor sought updated addresses for the 11 members whose nomination notices were returned as undeliverable. Nomination notices were re-mailed to 8 of the 11 members for whom updated addresses were found.

2

On January 16, 2018, the nomination meeting was held at the Local 307 union hall in Detroit, Michigan.  The members, who are employed by the United States Postal Service ("USPS") at mail processing and distribution facilities throughout Michigan, were also provided the option of submitting nominations in writing.  OLMS representatives supervised the nomination of candidates, as well as the election committee's determination of each nominated candidate's eligibility to run for and hold union office.  The Election Committee used dues payment and membership records provided by the Local 307 Treasurer to determine candidate eligibility for each nominee, and OLMS verified those determinations.  One nominee (Recording Secretary) was ruled ineligible since she failed to become current in dues payments prior to the nominations meeting.  All other nominees were current in dues and satisfied the candidate eligibility requirements.  A total of 24 members were nominated for office, and some members were nominated for multiple offices.  Nominees were given until January 23, 2018 to accept or decline their nomination.  A total of 19 candidates accepted nomination for 7 officer positions.  By notice dated January 29, 2018, the names of the candidates running for each officer position were posted at the postal facilities where Local 307 members are employed.

In the race for President, two nominees, Glenn Berrien and James Haggarty, accepted nomination.  Berrien was the incumbent Local 307 President.  Berrien had defeated Haggarty in the race for Local 307 President in the challenged election that was completed in February 2016.  Shortly thereafter, in July 2016, Berrien filed internal union charges against Haggarty alleging he misappropriated union funds during his term as Local 307 President.  As the internal union adjudication of these charges was pending at higher levels of the NPMHU at the time of the Local 307 nominations, and Mr. Haggarty satisfied the union's dues payment and working at the trade candidate eligibility requirements, OLMS determined that Mr. Haggarty was eligible to run

3

for and hold Local 307 office. Mr. Haggarty was therefore listed as a candidate for Local 307 President.

### a. Election Mechanics

Local 307 contracted with Unimatic Election Services, a third-party election vendor ("Unimatic") to handle the mechanics of the mail balloting process. Unimatic sub-contracted specific election-related printing and mailing tasks to ABC Mailing, Inc. In addition to printing and mailing the nomination notice, these vendors printed, assembled, and mailed ballot packages by first-class mail to the 1,047 regular members[1] of Local 307 on February 2, 2018. Each mail ballot package contained a white ballot containing the general officer positions, a return ballot envelope, a notice of election with voting instructions, and a secret ballot envelope. In addition, the ballot packages mailed to members employed in Grand Rapids included a green ballot for the Grand Rapids Branch President race. Similarly, the ballot packages mailed to members employed at the Detroit Network Distribution Center included a blue ballot for the Network Distribution Center Branch President race. On each return ballot envelope, ABC Mailing, Inc. had pre-printed two bar codes on the back. The first was a USPS bar code connected to the member's mailing address which had also been pre-printed on the back of the return envelope. The second, shorter bar code, was connected to a unique Unimatic control number assigned to each member and used for the purpose of verifying voter eligibility.

OLMS and the Local 307 Election Committee checked the post office box for returned undeliverable ballot packages on February 9, 16, 23, and 27, 2018. Only 12 ballot packages were returned as undeliverable. A total of 26 replacement ballots were mailed to members who had either requested a replacement ballot or for whom an updated address was found after the

---

[1] Article V, Sections 5-6 of the NPMHU Constitution and Article III, Sections 2 and 5 of the NPMHU Uniform Local Union Constitution prohibit retired members and associate members from voting.

4

original ballot package had been returned as undeliverable. There were only three undeliverable ballot packages for which the election committee and Election Supervisor could not find a better address to which to re-mail the member the ballot package.

Ballots were due to a post office box in Southfield, Michigan, on March 5, 2018, at 1:00 p.m. A total of 316 returned ballots were collected at that time, and counted immediately following their retrieval from the post office. The number of ballots collected in the 2018 supervised election was greater than the 289 ballots received for the union's regularly scheduled election of officers in February 2016.

### b. Election Protests

The election rules provided for a 15-day period for election protests. The last day protests were accepted was Monday, March 19, 2018.[2] OLMS received 26 separate written protests signed by a total of 31 members within the protest period. The Department's analysis of the 26 protests revealed seven unique allegations which are summarized below, followed by the Department's resolution of each allegation.

<u>Multiple members' protests about not receiving ballots</u>

Allegation 1: Of the 31 members who filed protests, 23 alleged that they did not receive a ballot. One additional member who filed a protest also alleged that members had not received their ballots.[3]

---

[2] On April 23, 2018, Glenn Berrien visited the OLMS office in Detroit, Michigan and sought to amend his post-election complaint by adding an allegation that union stewards failed to pursue grievances prior to the supervised election in order to influence the outcome. After reviewing the new information Mr. Berrien provided, OLMS, in consultation with the Department's Office of the Solicitor, determined that this issue, even if true, would not be a violation of Title IV of the LMRDA.

[3] Protests received on March 16, 2018 from Dorothy Coston, Alesie Bray, Reginald Parks, Onaysha Burton, Stephanie Parham, Jerald Johns Jr., Leah Perry, Dennis Bennett, Davita Harris, Jacqueline Ross, Twanda Nash, Jacqueline Battles, and Vergenia Pennyman. Protests received on March 19, 2018 from Glenn Berrien, Tiffani Williams, Eleanor Warren-Turnpiseed, Robert Roby Jr., Cheyne Wardrett, Danielle Christian, Don Saylor, Talia Carter, Adrielle Garnes, Carolyn Bell, and Lisa Porter.

<u>Response</u>:  Section 401(e) of the LMRDA, 29 U.S.C. § 481(e), requires that "[e]very member in good standing...shall have the right to vote for or otherwise support the candidate or candidates of his choice."  A labor organization is obligated to conduct its officer election in a way that affords all its members a reasonable opportunity to vote.  29 U.S.C. 452.94.

Prior to the mailing of the ballot packages, the OLMS Election Supervisor advised Local 307 and the Election Committee to update the membership mailing list.  In addition to updating the mailing list based on the undeliverable nomination notices, as described above, the Election Committee and the OLMS Election Supervisor took additional measures to ensure that members received ballots for the supervised election.  Those additional steps included verified updates of the member address list before the mailing of the mail ballot packages, regular checks of the post office box to collect returned undeliverable ballot packages, and attempts to find better addresses.

 A notice was posted at the USPS mail processing and distribution facilities where Local 307 members work informing them of the election and the specific steps to take to contact the Election Committee and/or the OLMS Election Supervisor to obtain a ballot.  These steps were successful.  With fewer than one-half percent of the ballot packages returned undeliverable, the membership mailing list contained current, up-to-date mailing addresses.  Updated addresses were identified and used to re-mail ballots for all but three of the ballot packages returned as undeliverable.  The process by which members were mailed ballots complied with the union's duty to take reasonable steps to maintain current mailing addresses for its members and thereby ensure that they had a reasonable opportunity to vote.

The OLMS analysis of the election records and the information provided by the 17 complainants interviewed by OLMS [4] revealed the following about the 23 persons who alleged they had not received ballots: seven confirmed they received ballots (and two actually voted their ballots); three were not members in good standing, and were therefore not eligible to vote; and the remaining 13 were listed on the membership mailing list used to mail ballots.

Of these 13 members, three had moved just prior to the beginning of the election process but had not informed Local 307 of their new addresses. As a result, Local 307 mailed their nomination notices and ballot packages to their last known home addresses on file. Neither the nomination notices nor the ballot packages mailed to these three members were returned as undeliverable. The remaining 10 members were listed on the membership mailing list with their correct mailing address. The examination revealed that none of these 10 members had a nomination notice or ballot package returned undeliverable. The election records reflect that these 13 members were mailed ballots to their most current address on file with Local 307. Since their ballots were not returned as undeliverable, no more current addresses could have been identified. There is no evidence of a failure to take reasonable steps to ensure a fair opportunity to vote.

Dale Dimet's pre-election protest received February 16, 2018

Allegation 2: Mr. Dimet alleged that ballot instructions were inaccurate in that the instructions stated to place a checkmark or "x" in the box next to the name of the candidate of his or her choice but, instead of a box, the ballot contained a circle.

---

[4] OLMS made repeated attempts to contact complainants Perry, Battles, Saylor, Garnes, Bell and Porter, but none responded. In addition, OLMS reached complainant Jacqueline Ross by telephone, but Ms. Ross declined to be interviewed by OLMS.

Response: The ballot tally was conducted under the supervision of the OLMS Election Supervisor. The ballot instructions directed members to "place a checkmark or 'x' in the box" next to the name of the candidate they wished to vote for. The ballots had a blank oval, not a square box, next to each candidate's name. All votes were counted if the voter's intent was clear. Moreover, there was no evidence that any member was confused by the instruction that referenced marking a box, instead of an oval.

Derek White's post-election protest received March 16, 2018; Glenn Berrien's post-election protest received March 19, 2018

Allegation 3: Mr. White and Mr. Berrien both alleged that James Haggarty was not eligible to run for the office of Local 307 President since Mr. Haggarty is currently "indebted to the local union."

Response: The matter of Mr. Haggarty's eligibility had been closely examined by OLMS, in consultation with the Department's Office of the Solicitor, prior to nominations. Both Mssrs. White and Berrien alleged that Mr. Haggarty owed Local 307 an amount equal to 44 hours of annual leave because of a NPMHU National Executive Board's December 17, 2017 determination. That determination stemmed from the internal union charges that Mr. Berrien had filed against Mr. Haggarty on July 9, 2016. Mr. Berrien charged Mr. Haggarty with misappropriation of union funds during his term as Local 307 President. On December 14, 2016, a Local 307 trial board concluded that Mr. Haggarty was guilty of the charges and barred him from running for or holding any union office for 13 years. Mr. Haggarty pursued the internal appeals available to him within the NPMHU. By letter dated December 17, 2017, the NPMHU National Executive Board exonerated Mr. Haggarty from most of the charges, but concluded he had to repay Local 307 for 44 hours of annual leave he had been paid in 2016. The letter further informed Mr. Haggarty that he had 60 days from receipt of the letter to repay Local 307 but he

8

would remain eligible to run for and hold union office during the 60-day period. The January 16, 2018, date for nominations for the supervised election fell within this 60-day period. In addition, before the 60-day period expired, Mr. Haggarty appealed the NPMHU National Executive Board decision to the Laborers International Union of North America ("LIUNA"). By letter dated February 2, 2018, NPMHU National President Paul Hogrogian stayed Mr. Haggarty's debt to Local 307 until the LIUNA General Executive Board makes a final determination on Mr. Haggarty's appeal. As of the March 5, 2018, ballot tally for this supervised election, the LIUNA General Executive Board had not made any final determination.[5]

As Mr. Haggarty's appeal was pending before the LIUNA General Executive Board at the time of nominations, OLMS had no basis to challenge Mr. Haggarty's eligibility to run for office. Mr. Haggarty was properly ruled eligible to run for Local 307 President.

Members' protests regarding their ballots being returned to them by USPS

Allegation 4: Six members filed separate post-election protests and one member filed a pre-election protest concerning ballots being returned to the member by the USPS after the member mailed their voted ballot using the pre-addressed, postage-paid return ballot envelope included with the ballot package.[6] One of the six members, Mr. Berrien, further alleged that the remedial actions taken by OLMS during the supervised election to address this issue were not sufficient.

Response: On February 14, 2018, the Election Committee notified OLMS that two members who had voted and mailed their ballots had their ballot envelopes returned to them in the mail at their home addresses. OLMS immediately interviewed the two members, examined their return

---

[5] To the best of my knowledge, Mr. Haggarty's appeal is still pending before the LIUNA General Executive Board.
[6] Tawanda Ficklin's protest received March 16, 2018; the March 19, 2018 protests of Natasha Buchanan, Heather Graham Mitchell, Lolita Wallace, Macio Alford III, and Glenn Berrien; Dale Dimet's pre-election protest received February 16, 2018.

9

ballot envelopes, and confirmed that the USPS incorrectly returned the ballot envelopes to the members instead of to the post office box address pre-printed on the front of the envelope. OLMS interviewed the USPS Inspector General Agent in Charge, the Senior Manager at the USPS Metroplex Mail Processing Facility, and Unimatic for information on what caused the envelopes to be misdirected back to the members. The OLMS investigation determined that during the mail sorting process, USPS automation scanning machines incorrectly read the address and/or bar code on the back of the return envelope instead of the post office box address on the front side of the envelope that contained the postage. USPS management advised that the USPS automation scanning machines were sorting the ballot return envelopes for delivery to the first address recognized by the machine; thus, if an envelope was fed through the machine backwards, the machine could erroneously read the return address and/or bar code as the delivery address. The Senior Manager of the USPS Metroplex Facility advised OLMS that by blacking-out the return address and bar code on the back of the return envelope, the automation scanning machines would be forced to continue to search for a viable address on any envelope, ensuring that it would be delivered to the designated post office box address printed on the front of the envelope. OLMS advised the two members, whose voted ballots were returned to them, that they should black-out their return address and the USPS bar code before re-mailing their voted ballots. Both members heeded the instructions. Their ballots were returned and counted at the tally.

OLMS informed the Election Committee and Local 307 Counsel of the specific steps members should take to "black-out" their return address and the USPS bar code on the back of the envelope to prevent delivery problems. On February 14 and 20, 2018, notices were posted at the USPS mail processing and delivery facilities alerting members to black out their return

address and bar code before mailing their voted ballots.  The black-out notices included a graphic of the back of a return ballot envelope to illustrate how to black-out the return address and USPS bar code.  By posting this black-out notice, Local 307 members were provided information on an added safeguard they could preemptively take to ensure delivery of their voted ballots.

The Department's investigation found that members saw and heeded the instructions on the black-out notice.  Of the seven complainants who raised this allegation, five voted in the election as their ballots were received by the deadline and counted.  OLMS interviewed complainant Tawanda Ficklin.  Ms. Ficklin advised that she saw the black-out notice posted at her facility prior to mailing her ballot.  Ms. Ficklin further stated that instead of blacking out her address and the USPS bar code as per the instructions on the black-out notice, she mistakenly blacked out the small Unimatic bar code.  Ms. Ficklin's ballot was not received by the deadline.  OLMS efforts to reach and interview the final complainant, Heather Graham Mitchell, were not successful.

The balloting period for the supervised election was 31 days – ballots were mailed on February 2, 2018 and the return deadline was March 5, 2018.  Despite USPS processing errors that resulted in some members having to re-mail their voted ballots, the number of ballots received by the deadline was slightly higher in this supervised election compared to the prior challenged Local 307 election in February 2016, which was the union's regularly scheduled election.

Glenn Berrien's post-election protest received March 19, 2018

Allegation 5:  Mr. Berrien alleged that members may have been denied the right to vote because all members on the dues deduction lists were not mailed ballots, and the voter eligibility standard used by OLMS deprived members of their voting rights.

<u>Response</u>: The NPMHU Uniform Local Union Constitution, Article VI, Section 4 requires Local 307 to mail ballots to all "regular members" by first-class mail. Consistent with this constitutional provision, the rules developed for the supervised election specified that all regular members of Local 307 would be mailed ballots. On February 2, 2018, the vendor hired by Local 307 mailed 1,047 ballot packages to all Local 307 regular members, regardless of whether they were in good standing and eligible to vote, or not. In accordance with Article V, Section 7 of the NPMHU Constitution, and as provided in the Election rules, only members in good standing were permitted to vote. To be in good standing, a member had to have paid dues through December 2017. Prior to tallying the ballots, the Election Committee, under the supervision of OLMS representatives, reviewed the dues deduction lists and confirmed the voter eligibility of each member who returned a ballot. Only ballots of members in good standing were included in the tally. There were three ballots not counted because the outer return envelope did not contain the information necessary to identify the person as a member in good standing and eligible to vote.

<u>Glenn Berrien's post-election protest received March 19, 2018</u>

<u>Allegation 6</u>: Mr. Berrien alleged that the U.S. Department of Labor refused to conduct a criminal investigation into the internal union charges that he filed against his opponent, Mr. Haggarty.

<u>Response</u>: In May 2017, Mr. Berrien provided OLMS with copies of the internal union charges he had filed against Mr. Haggarty in 2016, along with related documentation, including appeals and a union trial board's hearing transcript. In September 2017, OLMS received a second letter in which Mr. Berrien again requested an OLMS investigation into Mr. Haggarty. Shortly thereafter, Michael O'Hearon, who was then the Local 307 attorney, called OLMS to

follow-up on Mr. Berrien's request. OLMS informed the Local 307 attorney that the documentation Mr. Berrien submitted would be reviewed but the agency was primarily focused on supervising the election of officers pursuant to the Consent Decree and Order. As a matter of policy, OLMS can neither confirm nor deny the existence of a financial or criminal investigation into any labor organization or any person.

Glenn Berrien's post-election protest received March 19, 2018

Allegation 7: Mr. Berrien alleged that the U.S. Department of Labor over-zealously censored Local 307 correspondence to the Mail Handler membership during the supervised election.

Response: The Rules for the Local 307 supervised election included the requirement that, "The OLMS Election Supervisor will review all official written communications to the membership before distribution to avoid any inadvertent violations of section 401(g) of the LMRDA."

At the January 16, 2018 nomination meeting, Mr. Berrien, who was then Local 307 President, asked OLMS to approve a union letter he intended to distribute to the members at the George W. Young ("GWY") and NDC mail facilities. OLMS reviewed the letter and advised Local 307 to modify language that could be construed as promoting Mr. Berrien's re-election bid. These modifications were necessary because the timing, tone, and content of the original letter may have violated section 401(g) of the LMRDA which prohibits the use of union funds and resources to promote a person's candidacy. Local 307 distributed the OLMS-approved letter to members at the GWY and NDC mail facilities on January 17, 2018.

The OLMS investigation further revealed that Mr. Berrien had emailed the original, unrevised letter to all Branch Presidents on December 20, 2017, without consulting with the OLMS Election Supervisor. The distribution of the original letter – produced with union funds

13

and containing language promoting Mr. Berrien's accomplishments, and thus his candidacy for President in the supervised election -- may have violated section 401(g) of the LMRDA. Because Mr. Berrien was not re-elected, and no member protested the letter, OLMS did not attempt to quantify how many members at the GWY and NDC may have been exposed to the original, unrevised letter that Mr. Berrien mailed to all Branch Presidents on December 20, 2017.

The Department has concluded from its investigation of these election protests that Local 307's March 5, 2018 election of officers, conducted under the Department's supervision, complied with Title IV of the Act and was conducted, insofar as lawful and practicable, in accordance with Local 307's Constitution, the NPMHU Constitution and the LMRDA. Therefore, the results of this supervised election should be certified by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___19th__ day of June 2018, in the City of Washington, District of Columbia.

_____
Sharon Hanley, Chief
Division of Enforcement,
Office of Labor-Management Standards,
United States Department of Labor